UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACE HARDWARE CORPORATION,

                    Plaintiff,                    No. 05-CV-73996-DT

vs.                                               Hon. Gerald E. Rosen

OXFORD VILLAGE HARDWARE, INC.,
d/b/a, PONTIAC ACE HARDWARE; GROVE
ENTERPRISES, LLC, d/b/a, SOUTH LYON
LUMBER ACE HARDWARE, ORTONVILLE
ACE HARDWARE and ORION ACE HARDWARE;
NATHAN GROVE; COURTNEY GROVE; HAROLD
S. GROVE, and MARY ANN GROVE,

                    Defendants.
_____/

OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on ____February 2, 2009_____

PRESENT:  Honorable Gerald E. Rosen
               Chief Judge, United States District Court

I. INTRODUCTION

This breach of contract action is presently before the Court on the Motion of

Plaintiff Ace Hardware Corporation ("Ace") for Summary Judgment.  Underlying this

action is non-payment of debts incurred by Defendants for their purchases of goods,

services and inventory from Ace, on credit, for five separate Ace stores formerly operated

1

by Defendants prior to September 2005.  Specifically, in its four-count Complaint in this action, Ace seeks damages for (I) breach of contract resulting from Defendant Oxford Ace Hardware's non-payment for goods and services received and charges incurred by Defendants' stores in Oxford and Pontiac, Michigan; (II) breach of contract resulting from Defendant Grove Enterprises, LLC's non-payment for goods and services received and charges incurred by Defendants' stores in Ortonville, Lake Orion, and South Lyon, Michigan; (III) breaches of personal guaranties executed by Harold S. Grove and Mary Ann Grove as to obligations owed by Defendants' stores; and (IV) breaches of personal guaranties of credit by Nathan Grove and Courtney Grove as to obligations owed by the Grove Enterprises' stores.

Defendants have responded to Ace's summary judgment motion and Ace has replied.  Having reviewed and considered the parties' briefs, supporting documents, and the entire record of this matter, the Court has concluded that oral argument is not necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

### A.    The Parties

Plaintiff Ace Hardware Corporation ("Ace") is an Illinois-based corporation.  Ace operates as a retailer-owned cooperative, and its retailer members operate numerous Ace Hardware stores throughout the United States. The rights and obligations of Ace's various

retailers are set forth in the "Ace Hardware Membership Agreement" that each of its

retailers executes upon the commencement of their affiliation as an Ace Hardware store.

Pursuant to the Membership Agreement, Ace members are licensed the right to use

various Ace trademarks, and are authorized to purchase and resell merchandise from Ace,

to purchase or subscribe for advertising and promotional materials, signs, equipment and

the like from Ace, to attend Ace trade shows, workshops and seminars, and to receive

annual patronage dividends in connection with the ongoing operation of Ace stores. *See*

Plaintiff's Exhibits 1-5.

Defendant Oxford Ace Hardware ("Oxford") is a Michigan corporation, which

formerly operated Ace hardware stores in Oxford and Pontiac, Michigan.  Defendant

Harold S. Grove is the President of Oxford.  Defendant Grove Enterprises, LLC ("Grove

Enterprises") is a Michigan limited liability company which formerly operated Ace stores

in Ortonville, Lake Orion and South Lyon, Michigan.  Harold Grove's son, Defendant

Nathan Grove, is the Managing Member of Grove Enterprises.  Defendant Courtney

Grove is Nathan Grove's wife and Defendant Mary Ann Grove is Harold Grove's wife.

B.    DEFENDANTS' AFFILIATION WITH ACE HARDWARE AND THEIR
      EXECUTION OF THE ACE MEMBERSHIP AGREEMENTS AND
      GUARANTIES_____

The Groves and their hardware business first became affiliated with Ace in 1980,

and over the years, operated a number of Ace Hardware stores in Michigan. According to

Defendants, the Groves' relationship with Ace continued for more than 20 years without

negative incident until their investment in an Ace Hardware store in Owosso, Michigan

in the summer of 2000 did not pan out.  The Defendants ended up closing the Owosso store in October 2003.[1]

Having become dissatisfied with Ace as a result of their failed Owosso Ace Hardware investment, the Groves decided to convert their other Ace Hardware stores in South Lyon, Oxford, Pontiac, Ortonville and Lake Orion (the "Defendant Stores") to True Value Hardware stores.

With regard to these five stores, the most current Ace Hardware Membership Agreements were executed by Defendants Oxford and Grove Enterprises as follows:

**Pontiac**:      Executed by Oxford on September 16, 1997; accepted by Ace May 1, 1998;

**South Lyon**: Executed by Grove Enterprises December 9, 1999; accepted by Ace February 22, 2000;

**Oxford**:      Executed by Oxford on July 12, 2000; accepted by Ace December 8, 2000;

**Ortonville**:   Executed by Grove Enterprises June 19, 2002; accepted by Ace August 16, 2002; and

**Lake Orion**: Executed by Grove Enterprises January 3, 2003; accepted by Ace March 26, 2003.

[Plaintiff's Exhibits 1-5.]

At various times prior to and following the execution of the Membership Agreements, Defendants executed Guaranties of Credit ("Guaranties") that guaranteed all

---

[1]  The Owosso store's closing and the Defendants' indebtedness to Ace in connection therewith was the subject of a separate action before this Court.  *See Ace Hardware Corporation v. Owosso Ace Hardware LLC, et al.,* E.D. Mich. No. 04-73360.

obligations of Defendants' various stores due to Ace,[2] including Ace's extension of credit

on account to the Defendant Stores.  The various relevant Guaranties are as follows:

    (1)    Personal Guaranty by Harold Grove and Mary Ann Grove as to Oxford Village Hardware, Inc., executed June 10, 1980;

    (2)    Personal Guaranty by Harold Grove and Mary Ann Grove as to Grove Enterprises, LLC, d/b/a South Lyon Lumber Ace Hardware, Ortonville Ace Hardware, and Orion Ace Hardware, executed March 5, 2003;

    (3)    Personal Guaranty by Harold Grove as to Grove Enterprises, d/b/a South Lyon Lumber Ace Hardware, executed December 9, 1999;

    (4)    Personal Guaranty by all Grove family Defendants, as to Grove Enterprises, d/b/a South Lyon Lumber Ace Hardware, executed March 3, 2000;

    (5)    Personal Guaranty by Nathan Grove, as to Grove Enterprises, d/b/a South Lyon Lumber Ace Hardware, Ortonville Ace Hardware and Orion Ace Hardware, executed March 5, 2003;

    (6)    Personal Guaranty by Nathan Grove, as to Grove Enterprises, d/b/a South Lyon Lumber Ace Hardware, executed December 9, 1999;

    (7)    Personal Guaranty by Nathan Grove, as to Grove Enterprises, d/b/a Ortonville Ace Hardware, executed June 19, 2002;

---

[2] Defendants are mistaken when they state that Plaintiff has not submitted any guaranty as to the Pontiac store.  Although seven of the eight Guaranties specifically guaranty the obligations of particular stores owned by Grove Enterprises, LLC, Complaint Exhibit 1 guaranties all of the obligations, present and future, of the corporate defendant "Oxford Ace Hardware, Inc.," without limitation. Oxford owned and operated two stores -- Oxford Ace Hardware and Pontiac Ace Hardware.  Thus, the obligations incurred by Defendants at the Pontiac store are covered by the Guaranty at Complaint Ex. 1.

5

(8)     Personal Guaranty by Courtney Grove, as to Grove
        Enterprises, d/b/a Ortonville Ace Hardware, executed June
        19, 2002.

[*See* Complaint Exhibits 1-8.]

Defendants do not dispute their execution of these documents or the validity of

their signatures on the documents.

Both the Membership Agreements and the Guaranties of Credit provide that they

are to be interpreted and construed under the laws of the State of Illinois.  In relevant

part, the Membership Agreements provide:

[T]he Member hereby consents and agrees that:

(a)     All provisions of this Agreement shall be interpreted and construed
in accordance with the laws of Illinois, except that such state's choice of
law and conflicts of law rules shall not apply and the Illinois Franchise
Disclosure Act or any successor statute and/or regulation shall not apply
unless its jurisdictional requirements are met independently without
reference to this paragraph. . . .

[*See* Art. V, § 1(a) of Plaintiff's Exhibits 1-5.]

Each of the Guaranties similarly provide, "This Guaranty shall be governed by and

construed in accordance with the laws of the State of Illinois." [*See* Complaint Exhibits

1-8, p. 2.]

C.     DEFENDANTS' DEFAULT ON THEIR REPAYMENT OBLIGATIONS

It is undisputed that in early 2005, Defendants notified Ace of their intention to

discontine their Ace affiliation and to affiliate with True Value Hardware.[3]  Steve

Wolcansek, Ace's Regional Business Manager, met with Nathan Grove at the South

Lyon store, and completed an Ace Close Out Report which provided that the Groves'

South Lyon store was cancelling its Ace membership effective February 27, 2005.  *See*

Defendants' Ex. F; *see also* Defendants' Ex. R., Doc. # 00767.  The Close Out Report

also stated that upon verification by the Regional Business Manager that all Ace material

and signage was removed from the store, "a final reconciliation of your account will be

made."  *Id.*, Ex. F.  Mr. Wolcansek completed his verification, and on April 6, 2005,

presented the Close Out Report to Nathan Grove for his signature.  Mr. Grove, however,

refused to sign the Close Out Report on that date and told Wolcansek that he would not

sign until his attorney approved it.  *Id.; see also*, Defendants' Ex. R, Doc. # 00769.

When by May 3, 2005, Ace had not heard back from Grove, because the South Lyon

store had already converted to a True Value store and was already displaying a True

Value sign, Ace decided to proceed with the close out process.  *Id.*

Defendants other stores followed suit and also converted to True Value Hardware

stores.  On May 5, 2005, Ace acknowledged the conversion of Defendants' Oxford store

to a True Value store and notified Defendants by Certified Mail that, as a result of the

conversion, they were in breach of their Ace Membership Agreement, and that their

Membership Agreement was terminated as of that date.  *See* Defendants' Ex. R, Doc. #

---

[3]  "True Value Hardware" is actually known as TruServ Corporation, and like
Ace, is another retailer-owned national hardware cooperative.

7

00761.  Then, on July 15, 2005, Ace similarly acknowledged the conversion of
Defendants' Pontiac, Ortonville and Lake Orion stores and notified Defendants in writing
that pursuant to Article III, Section 1 of their Ace Membership Agreement, the Ace
Hardware membership of these stores would be terminated within 30 days.[4]  *See*
Defendants' Ex. G.

As of the dates of termination of Defendants' Ace Membership Agreements,
Oxford owed Ace $207,007.15 for unpaid credit purchases at the Oxford store and
$6,961.48 for unpaid credit purchases at the Pontiac store, for a total Oxford obligation of
$213,968.63. [*See* Complaint, ¶ 11.]  Grove Enterprises owed Ace $98,294.41 for unpaid
sums owed by the South Lyon Store, $94,966.01 for unpaid sums owed by the Ortonville
store, and $41,194.88 for sums owed by the Lake Orion store. [*See* Complaint, ¶ 18.][5]

---

[4]  Article III, Section 1 of the Ace Membership Agreement provides:

This Agreement may be terminated with or without cause at any time by
either the Member or the Company, by giving written notice of such
intention to terminate to the other party.  As used herein "cause" means a
breach by Member of any material obligation of this Agreement or the
Member Operational Requirements now in force or hereafter amended or
adopted by the Company. . . .  Any such notice shall be given not less than
thirty (30) days in advance of the termination date set forth in the notice. . .
.

[5]  These amounts due and owing have subsequently been, in some respects,
increased due to the accrual of late charges and fees, and in some respects, reduced as a
result of credits for patronage rebates and miscellaneous credits for returned merchandise
and services.  The most recent statement presented to the Court shows the following sums
as due and owing:

Oxford store:                    $165,530.63 (owed by Defendant Oxford)

Defendants have refused Plaintiff's demand for payment.

Though Defendants dispute the accuracy of amounts sought by Plaintiff,[6] they do not dispute their failure to pay for amounts due and owing to Ace for merchandise, materials and services as of the termination of their Ace Membership Agreements.

## III.  DISCUSSION

### A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the

| | |
|---|---|
| Pontiac store: | $1,866.75 (owed by Defendant Oxford) |
| South Lyon store: | $98,470.29 (owed by Defendant Grove Enterprises) |
| Ortonville store: | $88,881.01 (owed by Defendant Grove Enterprises) |
| Lake Orion store: | $37,063.35 (owed by Defendant Grove Enterprises) |

for a total unpaid balance as of January 29, 2007 of $391,812.03. [*See* Affidavit of Gordon Hampton, Regional Credit Manager for Ace Hardware, Plaintiff's Reply Brief, Ex. 1; *see also* Affidavit of Jeremy Scott, Senior Credit Analyst for Ace Hardware, Exhibits 1-5 appended thereto.]

[6]  *See* Defendants' Brief, Section II-C, pp. 13-14.

standards of review for a summary judgment motion. These cases, in the aggregate,

lowered the movant's burden on a summary judgment motion.[7] According to the *Celotex*

Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

> As the Sixth Circuit has noted, pursuant to the *Celotex* trilogy,
>
> * The movant must meet the initial burden of showing "the absence of a genuine
> issue of material fact" as to an essential element of the non-movant's case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the
> movant's denial of a disputed fact, but must "present affirmative evidence in order
> to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that
> it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the
> respondent's evidence. The respondent  must "do more than simply show that
> there is some metaphysical doubt as to the material facts." Further, "[w]here the
> record taken as a whole could not lead a rational trier of fact to find" for the
> respondent, the motion should be granted. The trial court has at least some
> discretion to determine whether the respondent's claim is plausible.

*See Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply

---

[7]"[T]aken together these three cases signal to the lower courts that summary
judgment can be relied upon more so than in the past to weed out frivolous lawsuits and
avoid wasteful trials. . . ." 10A C. Wright, A. Miller, M. Kane, Federal Practice &
Procedure 3d, § 2727.

these standards in deciding Plaintiff's motion for summary judgment in this case.

B.    THE CONTRACTUAL CHOICE OF LAW PROVISIONS ARE VALID

As an initial matter, Defendants argue that, notwithstanding the choice of law

provisions in the Ace Membership Agreements and the Guaranties of Credit calling for

application of Illinois law, Michigan law should apply because "Michigan has a

substantial interest in affording the protection of its laws, including its franchise laws to

its residents who purchase franchises to be operated in this State." [Defendants' Brief, pp.

7-8.]  To resolve this issue, a federal court whose jurisdiction is based on diversity of

citizenship must apply the conflict of law rules of the forum state. *See Klaxon Co. v.

Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Johnson

v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999).  Thus, the Court must look to

Michigan's conflict of law rules to determine whether Illinois law or Michigan law

governs this dispute.

Michigan has adopted the approach articulated in Section 187 of the Second

Restatement of Conflict of Laws in determining whether a valid choice of law provision

should be enforced.  *See Banek Inc. v. Yogurt Ventures, U.S.A., Inc*., 6 F.3d 357, 361 (6th

Cir.1993).; *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 126, 528 N.W.2d

698 (1995).  Under section 187, a contractual choice of law provision will govern unless

either:

> (a) the chosen state has no substantial relationship to the parties or the
> transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a
> fundamental policy of a state which has a materially greater interest than
> the chosen state in the determination of the particular issue and which,
> under the rule of [§ ] 188, would be the state of the applicable law in the
> absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1988).

Neither of these exceptions apply here.  The first Restatement exception clearly does not apply because Illinois has a substantial relationship to Ace and the Defendants, and the transactions between them.  There is no requirement in subsection (a) of Section 187(2) that the chosen state have a "substantially greater" relationship than the forum state; only that it have a "substantial" relationship.  Ace's headquarters and principal place of business are located in Illinois.   This is, in and of itself, sufficient to establish a "substantial relationship" under Section 187(2)(a).  *See e.g., Rex v. CSA Credit-Solutions of America, Inc.,* 507 F. Supp. 2d 788, 793 (W.D. Mich. 2007); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 902, 912 (W.D. Ky. 2007); *Power Marketing Direct, Inc. v. Clark*, 2006 WL 2583342 (S.D. Ohio 2006).  Not only does the situs of Ace's headquarters and principal place of business establish a sufficient "substantial relationship" with the State of Illinois, but also Defendants' Membership Agreements and Guaranties of Credit were accepted by Ace in the State of Illinois, the orders for goods and services were placed to Ace headquarters in Illinois, and Defendants' payments for those goods and services were processed and credited in Illinois.  Under these circumstances the Court finds that the exception of subsection (1) of Section 187(2) has

12

no applicability here.

As for exception (b) in Section 187, although not entirely clear, it appears that Defendants are arguing that Michigan has a materially greater interest than Illinois in affording the protection of its franchise laws to Michigan citizens and that a fundamental policy against choice of law provisions is embodied in Michigan's Franchise Investment Law. As an initial matter, the Court notes that the franchise laws are not at issue with regard to the breach of contract claims which are the subject of the motion for summary judgment under consideration here.[8] However, even assuming *arguendo* that Michigan's Franchise Investment Law were implicated in this case, the Sixth Circuit's ruling in *Banek, supra*, lays to rest any argument that choice of law provisions would run contrary to a fundamental public policy emanating from the MFIL. As the Court stated in *Banek*:

> The Michigan legislature was specific enough to include forum selection provisions in the list of void provisions, but did not specify choice of law provisions. Seemingly, the Michigan legislature understood that the

_____

[8] Unlike the 2004 suit involving Owosso Ace Hardware, in this case, Defendants have not cross-moved for summary judgment nor have they raised any counterclaim of violation of the Michigan Franchise Investment Law. (Although Defendants have asserted a counterclaim in this action for breach of fiduciary duty, neither party has sought summary judgment on the counterclaim and no facts or legal arguments in the parties' briefs address this claim. However, the Court notes that the Sixth Circuit has explicitly held, as a matter of law, that relationships between franchisees and franchisors do not give rise to fiduciary or confidential relationships between the parties. *See O'Neal v. Burger Chef Systems, Inc.*, 860 F.2d 1341, 1349-50 (6th Cir. 1988) (and cases cited therein); *McGuirk Oil Co., Inc. v. Amoco Oil Co.*, 889 F.2d 734, 737-38 (6th Cir. 1989). Furthermore, Article V, ¶ 7 of the Membership Agreement expressly provides: "It is further understood and agreed by the parties hereto that this Agreement does not create a fiduciary relationship between the parties." Therefore, it is unlikely that Defendants' counterclaim would survive summary judgment.)

burdens of being forced to arbitrate a claim in a foreign forum are significant, as subsection (f) makes arbitration or litigation forum selection clauses void.  However, litigating in Michigan does not require that Michigan law must govern the dispute.  <u>The statute does not expressly void choice of law provisions, and we decline to imply such a prohibition.  The Michigan legislature may have purposefully omitted choice of law provisions from those clauses prohibited because it may have realized that other states' laws might provide more protection to franchisees; thus, if a franchisee and franchisor want to choose a different state's law to govern any disputes, the parties may so contract.</u>

* * *

. . . <u>Alternatively, or additionally, the Michigan legislature may have recognized that requiring all franchises located in Michigan be governed by Michigan law, regardless of any agreement to the contrary, would make Michigan a less desirable target state for franchisors, making franchises in Michigan more expensive to own.  This would be largely because of a national franchisor's need for uniformity in its business affairs.  Having to comply with differing laws for each of the states in which it does business increases expenses.  In any event, Michigan has not indicated a desire to bar choice of law provisions either expressly or implicitly.</u>

6 F.3d at 360-61 (emphasis added).

*Banek* is controlling precedent in this Circuit and establishes that the "contrary to fundamental policy" exception in subsection (b) of Section 187(2) of the Restatement is inapplicable here.

For all of the foregoing reasons, the Court concludes that the Illinois choice of law provisions in the Ace Membership Agreements and Guaranties of Credit are valid.

C.    <u>DEFENDANTS' BREACH OF THE MEMBERSHIP AGREEMENTS</u>

Under Illinois law, if a contract is clear and unambiguous, a reviewing court must enforce the contract as written.  *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome,*

14

*Ltd.*, 194 Ill. App. 3d 744, 748, 551 N.E. 2d 340, 342-43 (1990); *A.A. Conte, Inc. v. Campbell- Lowrie-Lautermilch Corp*., 132 Ill.App.3d 325, 329, 477 N.E.2d 30, 33 (1985). In the absence of ambiguity, a court must treat the language in a contract as a matter of law and construe the contract according to its language, not according to constructions which the parties place on this language. *Lenzi v. Morkin*, 103 Ill.2d 290, 293, 469 N.E.2d 178, 179 (1984). Unless the contract clearly specifies its own meanings, the court must interpret the words or language of the contract with their common and generally accepted meanings. *Crane v. Mulliken*, 86 Ill.App.3d 1076, 1081, 408 N.E.2d 778, 781. (1980). Furthermore, the court must place the meanings of words within the context of the contract as a whole. *J.M. Beals Enterprises, supra*; *Board of Trade of City of Chicago v. Dow Jones & Co.*, 98 Ill.2d 109, 122-23, 456 N.E.2d 84, 90  (1984).

In this case, the Ace Membership Agreements provide, in relevant part, in Article II "Duties and Responsibilities of the Member":

> The Member agrees:
>
> * * *
>
> To pay all amounts shown as currently due on the Company's billing statements for purchases of merchandise, supplies and services made by the Member and other sums incurred by the Member with such promptness as shall enable the Company to receive payment no later than the 10th day following the date of the statement (it being understood that all invoices for merchandise purchased on extended payment terms become currently due when other items billed are not paid when due), and to pay such service charge per bi-weekly statement on any past due balance as the Company regularly imposes upon its licensed members (it being acknowledged by the Member that, unless the Member has been or is hereafter informed by the Company in writing of a change which has been or is to be made in the percentage applied by it in determining such charge, such percentage shall

15

be .77% of the past due balance shown on each statement except that the percentage applied to any business operated by the Member in Texas shall be .384% and to any business operated by the Member in Georgia shall be .692%) unless and until such time as notice of change is given to the Member as aforesaid.

[Membership Agreement, Article II, ¶ 11.]

The language of the Agreement is plain and unambiguous.  The plain language of the Agreements executed by the parties required that Defendants Oxford and Grove Enterprises pay all amounts due on the billing statements within 10 days of the statement date.  It is undisputed that Defendants have not paid these sums.

Defendants make the nonsensical argument that Article II, ¶ 11 of the Agreements "does not say that untimely payment is a breach, merely that a service charge will apply." [Defendants' Brief, p. 12.] Defendants' construction is clearly not borne out by the plain language of the Agreement which states that the Member agrees  "to pay all amounts shown as currently due on the Company's billing statements. . .no later than the 10th day following the date of the statement. . . "***and*** to pay [a] service charge. . . on any past due balance [of] .77% of the past due balance shown on each statement."  Membership Agreement, Article II, ¶ 11 (emphasis added).

Defendants also argue that Ace should be deemed to have waived any right to demand strict compliance with the terms of the Agreement and demand full payment within 10 days by virtue of "the conduct of the parties over 26 years." [Defendants' Brief, p. 12.]  However, the Agreement clearly provides that "No waiver by the Company of

16

any obligation of the Member. . . shall be effective unless it is in writing and signed by the officer of the Company." *See* Membership Agreement, Article V, ¶ 8. Article V, ¶ 8 further provides: "Neither party shall be deemed to have waived or impaired any of its rights hereunder (*including, without limitation the right to demand exact compliance with every term, condition and provision herein*. . .) by reason of any verbal agreement between the parties or *by virtue of any custom, practice or actions of the parties at variance with the terms hereof*. . . ." *Id.* (emphasis added.)

In sum, the Court finds no merit in Defendants' arguments in defense of Plaintiff's claim of Defendants Oxford and Grove Enterprises' breach of the Membership Agreement.[9] Therefore, the Court will grant Plaintiff's motion for summary judgment on

_____

[9] Defendants also argue that summary judgment is precluded because they asserted in their Answer various affirmative defenses, and Ace has not addressed in its Motion any of these defenses. However, contrary to Defendants' assertion, nothing in the law suggests that it is enough to defeat a properly supported motion for summary judgment that the defendant have propounded an affirmative defense in its answer to the complaint. Indeed, the Supreme Court made it abundantly clear in *Celotex* and *Anderson v. Liberty Lobby*, *supra* that, to withstand summary judgment, defendants, may not simply rely upon their answer to the complaint. *See Celotex, supra* 477 U.S. at 23-24, 106 S.Ct. at 2552-53 ("A party resisting summary judgment cannot expect to rely on the bare assertions or mere cataloguing of affirmative defenses.") Rather, defendants must "present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, supra*, 106 S.Ct. at 2514 (1986). As the court succinctly stated in *Frankel v. ICD Holdings S.A.*, 930 F.Supp. 54, 65 (S.D.N.Y.1996),

> [O]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense.

Defendants' Oxford and Grove Enterprises' liability on Plaintiff's breach of contract claims in Counts I and II of Plaintiff's Complaint.[10]

D.    THE GUARANTIES OF CREDIT ARE VALID AND BINDING UPON THE INDIVIDUAL DEFENDANTS

The Guaranties of Credit that Harold, Nathan, Mary Ann and Courtney Grove executed unconditionally guaranteed to Ace the payment of the full amount of Oxford's and Grove Enterprises' obligations or indebtedness. [*See* Complaint Exhibits 1-8.]

Under Illinois law, a guaranty agreement is considered a contract.  *See AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001) (citing *McLean County Bank v. Brokaw*, 119 Ill. 2d 405, 519 N.E.2d 453, 456 (1998).  Guaranty agreements are to be "interpreted in accordance with their clear and unambiguous meaning." *Chrysler Credit Corp. v. Marino* 63 F.3d 574, 577 (7th Cir. 1995).  The clear and unambiguous terms of the Guaranties of Credit obligate Harold, Mary Ann, Nathan and Courtney Grove to pay all amounts due and owing by Oxford and Grove Enterprises for purchases of merchandise, supplies and services.  Defendants do not dispute their execution of the Guaranties or their validity.[11]  Therefore, the Court will grant Plaintiff's

---

*Id.*  Defendants here have not met this burden.

[10]  Because the Court does not have current damages figures, it will enter summary judgment only as to Defendants' liability, at this time.  Damages will be awarded upon Plaintiff's filing of a verified and documented Affidavit of damages to date.

[11]  Although Defendants assert that a fundamental change in the nature of an entity may extinguish an individual's guaranty of the debts of that entity, they have made no allegation nor presented any evidence of any such change in the Oxford corporation or

18

Motion for Summary Judgment as to Defendants Harold Grove, Mary Ann Grove, Nathan Grove, and Courtney Grove's liability on Counts III and IV of Plaintiff's Complaint.

The Court also will deny Defendants' First Motion to Supplement the Record. In this motion, filed nearly a year after Plaintiff moved for summary judgment, Defendants ask the Court to deny Plaintiff's Motion for Summary Judgment and extend discovery because Ace Hardware Corporation issued a press release announcing that it was working to restate the corporation's past financial results because it discovered an error in the company's historical financial statements. This press release is not relevant to any of the breach of contract issues involved in this action. Therefore, discovery on the issues addressed in the press release is not warranted.

## IV.  CONCLUSION

For all of the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment **[Dkt. # 29]** is GRANTED as to the liability of the Defendants.

IT IS FURTHER ORDERED that Defendants' First Motion to Supplement the Record **[Dkt. # 41]** is DENIED.

---

the Grove Enterprises LLC, the entities involved in this case. Further, Defendants cite no Illinois authority supporting their assertion. (The Illinois cases Defendants cite involved material changes made in the main contract without the consent of the guarantor, not changes in the nature of the entities whose debts were guaranteed. *See e.g., Lawndale Steel Co. v. Appel*, 98 Ill. App. 3d 167, 423 N.E.2d 957 (1981); *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879 (7th Cir. 2005), cited at p. 10 of Defendants' Brief. Defendants' cited cases are simply inapplicable.)

19

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 2, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on February 2, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

20